IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| OSTEOPLASTICS, LLC,<br><br>                Plaintiff,<br><br>v.<br><br>CONFORMIS, INC.,<br><br>                Defendant. | C.A. No. 20-405-MN-JLH |

**REPORT AND RECOMMENDATION AND ORDER**

Pending before the Court are the parties' second round of claim construction and indefiniteness disputes related to terms in United States Patent Nos. 8,781,557 (the "'557 Patent"), 9,292,920 (the "'920 Patent"), 9,330,206 (the "'206 Patent"), 9,626,756 (the "'756 Patent"), 9,672,617 (the "'617 Patent"), 9,672,302 (the "'302 Patent"), and 9,275,191 (the "'191 Patent"). The parties consented to my jurisdiction to decide the remaining claim construction issues, but did not consent to me deciding the question of indefiniteness. (D.I. 167.[1]) On August 2, 2022, I held a hearing on Defendant's motion for summary judgment of indefiniteness on two sets of claim terms and on the parties' competing proposals for construing those terms if they are not held indefinite. I now recommend and order as follows:

---

[1] The parties' May 23, 2022 joint letter to the Court stated as follows:
> [T]he parties consent to Judge Hall's jurisdiction over the outstanding claim construction issues related to the terms "deforming" and "matching" so that, if Judge Hall construes those terms, any such construction can be issued in an order to which the parties would not object under Fed. R. Civ. P. 72. The parties do not consent to Judge Hall's jurisdiction on the outstanding issue of indefiniteness and any ruling by Judge Hall on the indefiniteness issues would be done through a report and recommendation to which the parties could object under Fed. R. Civ. P. 72(b).

(D.I. 167.)

| | |
|---|---|
| "deforming the template to match the anatomical landmarks" / "deforming the template to match the anatomical landmarks on the image" / "deforming the three-dimensional template to the computer-generated 3-dimensional representation" / "deforming the template to the computer-generated 3-dimensional representation to create a deformed template" / "deforming the three-dimensional template to match the identified anatomical landmarks" / "deforming the three-dimensional template to match at least a portion of the mapped external surface"<br><br>'557, '206, '920, '617, '302, and '191 Patents | Recommendation: The Court should deny Defendant's motion for summary judgment of indefiniteness.<br><br>Order: To the extent the claims are not held to be indefinite, the phrases are construed as "automatically changing the shape of the template so that the anatomical landmarks of the template match the same anatomical landmarks of the patient's tissue using only a computer algorithm." |
| "matching a computer-rendered three-dimensional template onto a computer-rendered three dimensional surface of tissue surrounding the patient's target tissue of interest"<br><br>'756 Patent | Recommendation: The Court should deny Defendant's motion for summary judgment of indefiniteness.<br><br>Order: To the extent the claims are not held to be indefinite, the phrase is construed as "automatically matching the anatomical landmarks of the template with the same anatomical landmarks on a representation of tissue that borders but is not part of the patient's target tissue of interest, using only a computer algorithm." |

## I.     LEGAL STANDARDS

### A.     Claim Construction

The purpose of the claim construction process is to "determin[e] the meaning and scope of the patent claims asserted to be infringed." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). When the parties have an actual dispute regarding the proper scope of claim terms, their dispute must be resolved by the judge, not the jury. *Id.* at 979. The Court only needs to construe a claim term if there is a dispute over its meaning, and it only needs to be construed to the extent necessary to resolve the dispute. *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999).

"[T]here is no magic formula or catechism for conducting claim construction." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1324 (Fed. Cir. 2005). But there are guiding principles. *Id.*

"The inquiry into how a person of ordinary skill in the art understands a claim term provides an objective baseline from which to begin claim interpretation." *Id.* at 1313. In some cases, the ordinary meaning of a claim term, as understood by a person of ordinary skill in the art, is readily apparent even to a lay person and requires "little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314. Where the meaning is not readily apparent, however, the court may look to "those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean." *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1116 (Fed. Cir. 2004). Those sources include "the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art." *Id.*

"The claims themselves provide substantial guidance as to the meaning of particular claim terms." *Phillips*, 415 F.3d at 1314. For example, "the context in which a term is used in the asserted claim can be highly instructive." *Id*. Considering other, unasserted claims can also be helpful. *Id*. "For example, the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim." *Id.* at 1314–15.

In addition, the "claims must be read in view of the specification, of which they are a part." *Id.* at 1315 (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). The specification "is always highly relevant to the claim construction analysis." *Id.* (quoting *Vitronics*, 90 F.3d at 1582). The specification may contain a special definition given to a claim term by the patentee, in which case, the patentee's lexicography governs. *Id.* at 1316. The specification may also reveal an intentional disclaimer or disavowal of claim scope. *Id.* However, "even when the specification describes only a single embodiment, the claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using words or expressions of manifest exclusion or restriction." *Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1372 (Fed. Cir. 2014) (internal marks omitted).

Courts should also consider the patent's prosecution history. *Phillips*, 415 F.3d at 1317. It may inform "the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Id.* Statements made by a patentee or patent owner during *inter partes* review may also be considered. *Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1362 (Fed. Cir. 2017).

In appropriate cases, courts may also consider extrinsic evidence, which "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Markman,* 52 F.3d at 980. For example, dictionaries, especially technical dictionaries, can be helpful resources during claim construction by providing insight into commonly accepted meanings of a term to those of skill in the art. *Phillips,* 415 F.3d at 1318. Expert testimony can also be useful "to ensure that the court's understanding of the technical aspects of the patent is consistent with that of a person of skill in the art, or to establish that a particular term in the patent or the prior art has a particular meaning in the pertinent field." *Id.*; *see also Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 331–32 (2015).

### B. Indefiniteness

Section 112 of Title 35 imposes a definiteness requirement on patent claims. 35 U.S.C. § 112(b) (requiring that the claims "particularly point[] out and distinctly claim[] the subject matter which the inventor . . . regards as the invention"). "The primary purpose of the definiteness requirement is to ensure that the claims are written in such a way that they give notice to the public of the extent of the legal protection afforded by the patent, so that interested members of the public, *e.g.*, competitors of the patent owner, can determine whether or not they infringe." *All Dental Prodx, LLC v. Advantage Dental Prods., Inc.*, 309 F.3d 774, 779–80 (Fed. Cir. 2002).

"A patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014). Definiteness, like claim construction, should be assessed from the viewpoint of a person of ordinary skill in the art at the time the patent was filed, and it should be considered in view of the patent's specification and prosecution history. *Id.* at 908.

I.   **DISCUSSION**

This case involves seven asserted patents. All seven are continuations or continuations-in-part of the same original application.

I held a *Markman* hearing on August 9, 2021. At the hearing, the parties disputed the construction and definiteness of a number of terms including whether two groups of terms—"deforming . . ." and "matching . . ."—were indefinite. I issued a Report & Recommendation that resolved most of the parties' claim construction disputes and recommended deferring the question of indefiniteness to the summary judgment stage of the case. (D.I. 89.) The Court adopted my Report & Recommendation. (D.I. 127.)

The parties now reraise their disputes about whether two groups of terms—"deforming . . ." and "matching . . ."—are indefinite and, if not, how they should be construed. I held a lengthy hearing on August 2, 2022.

A.   **"deforming . . ."**

The "deforming . . ." terms are found in the '557, '206, '920, '617, '302, and '191 patents. Defendant seeks summary judgment of indefiniteness of those patents. Defendant argues that the intrinsic record fails to inform persons of skill in the art what the step of "deforming" is or how it differs from the step of "superimposing," which is a separate limitation in most (but not all) of the patents.

Plaintiff says that the "deforming" terms would be understood by persons in the art reading the patents to mean "changing the shape of the template so that the anatomical features/landmarks of the template match the same anatomical features/landmarks of the patient's tissue using a computer algorithm." Plaintiff supports its position with opinions from its expert, Dr. Morse. (D.I. 170, Ex. 1B ¶¶ 369–79; Ex. 15 ¶¶ 24–40.) Dr. Morse further opines that a person of skill would

understand the "superimposing" step (as construed by the Court) to be different from the "deforming" step because "superimposing" (as construed by the Court) does not require changing the shape of the template. (*See, e.g., id.*, Ex. 15 ¶ 39.)

That and other extrinsic evidence submitted to the Court reflects that there is an underlying factual dispute relevant to the legal determination of whether the claims fail to inform those skilled in the art with reasonable certainty about the scope of the "deforming" term in each of the patents where it appears. Accordingly, I recommend that the Court deny Defendant's request for summary judgment of indefiniteness of the '557, '920, '206, '617, '302, and '191 patents.

Defendant says that if the deforming terms are not held to be indefinite, they should all be construed to mean the same thing: "automatically changing the shape of the template so that the anatomical landmarks of the template match the same anatomical landmarks of the patient's tissue using only a computer algorithm." Plaintiff disagrees that the claimed "deforming" must be performed "*automatically* . . . using *only* a computer algorithm"; however, Plaintiff "recognizes that this issue has been [previously] resolved by the Court in connection with other disputed terms, namely the 'superimposing' term." (D.I. 169 at 1.) Accordingly, to the extent that the deforming terms are not indefinite, I order that they be construed as, "automatically changing the shape of the template so that the anatomical landmarks of the template match the same anatomical landmarks of the patient's tissue using only a computer algorithm."

      B.     "matching . . ."

Every claim of the '756 patent requires "matching a computer-rendered three-dimensional template onto a computer-rendered three dimensional surface of tissue surrounding the patient's target tissue of interest." Defendant seeks summary judgment of indefiniteness on the basis that

7

the claims and intrinsic record do not inform a person of skill in the art about the boundaries of either the "target tissue of interest" or the tissue "surrounding" it.

Defendant's argument essentially goes like this: In describing the preferred embodiment, the specification uses the phrase "target tissue" in such a way that a reader would understand it to include both defective and non-defective portions. (*See, e.g.*, '756 patent, 9:2–5.) According to Defendant, the claimed "target tissue of interest" would be understood to refer to this "target tissue," so it would therefore be understood to include both defective and non-defective portions. But if the target tissue of interest can include non-defective portions, says Defendant, a person of skill in the art would not understand the boundaries of either the target tissue of interest or the tissue that "surround[s]" it.

I recommend that Defendant's motion for summary judgment be denied. As an initial matter, I am unpersuaded that a person of skill in the art reading the patent would understand the claimed "target tissue of interest" to mean the same thing as the "target tissue" described in the portion of the specification cited by Defendant. Moreover, the record before the Court contains extrinsic evidence suggesting that a person of skill in the art reading the claims in view of the specification would reasonably understand that the "target tissue of interest" in the claims of the '756 patent means the defective portion and that what is matched are the landmarks in the undamaged tissue. (*See, e.g.*, D.I. 170, Ex. 15 ¶¶ 41–44.) And there is no dispute, at this time, that a person of skill in the art could understand the boundary between the damaged and undamaged parts of a patient's tissue.

Defendant says that if the matching term is not held to be indefinite, it should be construed to mean, "automatically matching the anatomical landmarks of the template with the same anatomical landmarks on a representation of tissue that borders but is not part of the patient's target

8

tissue of interest, using only a computer algorithm." Plaintiff disputes that matching must be done "automatically . . . using only a computer," but I conclude that it must for the reasons discussed above and in my prior recommendation.

## II. CONCLUSION

For the reasons stated above, I recommend that the Court deny Defendant's request for summary judgment of indefiniteness. I order that the claims shall be construed as set forth above.

Dated: September 9, 2022

_____
The Honorable Jennifer L. Hall
United States Magistrate Judge